23-21-21. Council, you may proceed. Good morning, Your Honors. Assistant Federal Public Defender Amy Sena on behalf of Martín López may please the Court. Faced with a compromised case after the alleged victim refused to testify, the government filled the gaps in its case through the testimony of two investigating officers who interviewed the victim before trial. Though the prosecutor's artful questions ensured that the officer's testimony didn't quote the victim verbatim, the testimony's substance and structure left the jury with only one possible inference. The alleged victim, in her out-of-court interviews, had accused Mr. López of committing the very crimes for which he stood trial. Allowing prosecutors to circumvent the confrontation clause with such obvious wordplay would render this constitutional right nothing more than an empty formality. This Court should reverse. So, Council, let me ask you, first of all, about whether Tenth Circuit law constrains us on this issue. So, this Court said in Ibarra-Díaz that there has to be an identifiable statement from the out-of-court declarant, this would be Ms. Molina here, to find hearsay in the case. Is hearsay by implication open to the Court now after Ibarra-Díaz? Yes, Your Honor. The government doesn't rely on Ibarra-Díaz, and for good reason, because that issue wasn't squarely presented to the Court about this idea of implicit hearsay. I believe there was a long footnote in that case where the Court chastises the defense for poor briefing, for not setting up the issue, and really making a real mess of it for the Court to sort out. And so under those circumstances where neither the defense raises this implicit hearsay issue nor the government talks about it, it's one of those issues that's not squarely presented and I think doesn't constitute binding case law for that reason. Well, I'm looking at the case right now, and the words implied hearsay and hearsay by implication don't appear, but what does appear is a discussion of whether the testimony constitutes testimonial hearsay. And the Court in this case said no, because there's no identifiable statement. And I'm just, I know you commented already, but I want to know what is your best argument to say that this doesn't get in the way of your argument? So I think, again, it wasn't squarely presented to the Court. And I think the question of whether there's an identifiable statement is really about what happened outside of court. And here we know that there were statements made by Ms. Molina during her out-of-court interviews with police because that's what the officers told us. And so, you know, when we're trying to determine, really the question is whether that out-of-court statement has been offered for the truth of the matter. And looking to just the principles of Crawford, really, you can't read Crawford without coming to the conclusion that this sort of testimony is not permissible because it conveys the substance of a statement. And so if it really turned on whether there was an identifiable statement in terms of whether it was directly quoted, then the underlying principle of Crawford would be violated, which is that the whole point of the Confrontation Clause is to avoid this use of ex parte evidence against the accused at trial without him having really any ability to challenge it, as well as the portion of Crawford that talks about the reasoning behind that case and that, you know, in rejecting the reliability standard that used to exist, saying that the Confrontation Clause can't be subject to manipulatable standards. Could I just ask you, I think, as I'm understanding the argument, that the line of questioning, particularly to Agent Romero, as much as indicated what Ms. Molina said, and you refer in your brief to the accusatory content of the interview, how do we know she made accusations in the interviews, given that there is some indication in the record that she didn't want to cooperate with the prosecution? In other words, they could have asked her all these questions, and she could have said, I'm not going to help. That's it. I'm not going to help you against Mr. Lopez. If there's some confusion or at least some possibility that that could have happened, what does that do to your argument? So that's true for explicit hearsay as well. So if I testify in court and I say, Judge Carson told me he loves baseball. If he actually told me that he hates baseball, that doesn't make my statement not hearsay. And so it's the same principle that applies for implicit hearsay. The point is that the substance of the statement, whether true or not, is being put in front of the jury. That's the whole point of the rule. That's why we have the confrontation clause, so that we can get Judge Carson into court and put him under oath and ask whether he does love baseball or not. And so that's the same exact principle that's underlying implicit hearsay. We don't know what she said, but we do know what the clear and obvious implication from the testimony as it came out was to the  Is that really true? Because you have cited a lot of out-of-circuit cases, and I agree with you that virtually all of those cases do strongly suggest that if there's a causative component between what the officer says that happened with regard to the investigation correlating to what the out-of-court declarant said, then that is a strong implication of, in Judge Mathison's question, of what the witness said. Here, however, there's two things going on that are different than most of the cases. Agent Romero and Agent Whitaker both had the benefit of two 9-1-1 calls. They had, or actually, two 9-1-1 callers. I guess there were a number of 9-1-1 calls. Catalina has the contemporaneous 9-1-1 call starting in the vehicle. And so Agent Romero knows that. Agent Whitaker knows that. And the only of these questions, after that, not because of that, after that, the investigation moved forward, correct? And the question does not denote causation, which is the element, at least in a number of out-of-circuit cases, that triggers the implied hearsay rule. So I don't think any of those cases turn on the causality, though there is causality here. If you look at Whitaker's testimony, he says that the interviews allowed him to procure more details that allowed the investigation to proceed. So that was causal there. But also, I don't think that's what those out-of-circuit cases were turning on. They were turning on what's the implication, what would a jury possibly understand from this. And there's no other way to look at the testimony here. Sergeant Whitaker's testimony, it happens at the very end of his direct examination. It's one of the last things that the jury hears from him on direct. He says Ms. Molina is initially reluctant, but then they're able to procure more details. Those details allowed the investigation to proceed. And then he talks about how hard he and the other officers tried to force her to testify at trial. And so the message is unmistakable there. There's no reason that the officer would focus on this testimony for the jury unless it was because it was the direct elements of the offense that he asked about. And then those are problematic in themselves, right? If he had gone through those first five questions, did you ask this, did you ask this, did you ask this, did you ask this, I'm assuming that you would be standing here arguing about Whitaker but not Romero. It's that last question. After you ask those questions, the investigation moved forward, right? I think even getting into the specificity of the questions themselves, there's no reason for the agent to do that. What if the last question was notwithstanding your discussion with Christina in light of all of those episodes, despite that, you still move forward with the investigation? I'm guessing you wouldn't be arguing implied hearsay. It's hard to say, Your Honor. I think that's obviously not the situation that we have here. But isn't that significant, though? Because then the question is, is the implied hearsay really contingent on the prepositional clause that prefaces that last question after, because you asked all of those questions. It's all how we set up that last question. I think the last question is certainly very important in driving the point home, making sure the jury doesn't miss it. But I think no reasonable jury could possibly think that they're going into this level of detail and questioning unless those questions were helpful for the prosecution. And the Kizzee case out of the Fifth Circuit has almost the identical structure, where they asked about the officer's side of the testimony. And the Fifth Circuit says, that's the clear and logical implication, that you're only getting into that level of detail because you're trying to imply for the jury that the answers were yes. Could I do a follow-on to Judge Bacharach's question, which is this? If the officers had simply said that they interviewed Ms. Molina and then they decided to pursue charges, would that be hearsay by implication? So I think, yes, and some of the cases have that exact structure, where all it is is I interviewed this out-of-court witness and then we decided to arrest, to issue a search warrant, to proceed with charges. But we don't have to do that line drawing here because we have so much more. I understand. You've got a series of questions. They're detailed and so forth. But do you need that for the argument? I mean, have you got a case that would match up what I just gave you? I think – I believe that I do. I mean – Well, I don't want to interrupt. Sure. No, and I'm happy to submit it specifically in a 28-J, because there's nine cases and I'm trying to keep them all in my head. But I know that there were cases, I think perhaps the Jones case in the Fifth Circuit, where there's just one follow-up question. It's not this lengthy line of questioning that we have here. And that's still enough for the courts. And this Court's background testimony – or background evidence cases, Cass and Hinson, those aren't implicit hearsay because they do say, he told me, instead of implying that. But it's the same where it's just one or two questions. It's very quick. And this Hinson says it's the clear and obvious implication that you're not using this as background because it goes directly to the heart of the issue. And it wasn't necessary as background because the jury understands perfectly well why we're all here today. Let me back you up a minute. I want to back up to Judge Mathison's discussion with you about Ibarra-Diaz. And you had reasons why you would distinguish that case. You know, well, the issue wasn't squarely presented, maybe not briefed like this case was. But I'm concerned that that case creates problems for you on the plainness issue. I mean, even if we give you that there's an error, and maybe that case is distinguishable in some ways, doesn't it suggest that any error that was made here is not plain? No, I don't think so. Because there's no way to read Crawford other than prohibiting this type of testimony. And Ibarra-Diaz did not consider whether Crawford prohibited it. And so, obviously, a Supreme Court case is what makes it plain. But also — Well, but you don't have an implied hearsay Supreme Court case or an implied hearsay Tenth Circuit case that makes it plain. That's true, Your Honor. But implicit holdings can make things plain. This Court said that in Wolf's name. And so the implicit holding is that if the Court is saying — You've got a lot of implicits in this case. Yeah. Implicit within implicit, Your Honor. But if the Court is saying that you can't have the confrontation right turn on these easy-to-manipulate standards, which is what the Court says in Crawford, then that clearly applies here. Because this is so easily manipulatable. Any prosecutor could just say, what did you learn, officer, instead of what did the witness say, and then all of a sudden we've snuck in testimonial hearsay through the back door. That can't be the way it goes for a bedrock constitutional right. Well, that's not implicit, though. That's where they actually say it. They say what they learned. We all know where it came from. In this case, it's the opposite. They don't ever say it, but it's implied. I think it's still implicit in that case, Your Honor, because it's just perhaps more obviously implicit, because there's not a direct quotation. But we all know that the officer learned. That's the same thing as saying that it's implicit. But I think there's no way to read Crawford, and I don't think that — I see my time has expired. May I finish my — Please do. But we also have the weight of authority in all of the other circuits. This Court would be creating a circuit split, and the government has offered no principled reason for why this type of hearsay should be allowed, and that's because there isn't one, and the constitutional harm would be exactly the same. Thank you. Thank you. Judge Manson, do you mind if I ask you a question? Could you take one more question? Oh, sure. Yes, of course. Okay. And I'm sorry. I know we've already cheated you out of your rebuttal, so apologies. But I want to ask you — and this does interrelate with the Confrontation Clause. You make an argument, and frankly, I think it's quite persuasive on the closing argument. And being the excellent attorney you are, you combine those, which is permissible and I think a good strategy. And the line that I'm particularly concerned about is Ms. Molina doesn't deserve to live in fear for her life. And so you make a very good argument, and it is sort of elucidated in some of the out-of-circuit cases that this is the hammer that makes the implication clear. My problem is something the government, I don't think, has argued that I worry about. A closing argument is not evidence. There is no precedent that I'm aware of. There are out-of-circuit cases saying a closing argument is not evidence. And so can we marry the problematic statements in closing argument with the problematic question to Whitaker and the problematic question to Romero? And as a corollary to that question, on an independent issue involving the Confrontation Clause in terms of the closing argument, don't we have to reject that, at least at plain error, because there is no precedent that allows a constitution or that recognizes a constitutional violation under the Confrontation Clause based on something that's not evidence or argument? So the Hutchins decision in the Eleventh Circuit decided this issue, and there was some implication in the testimony, but then, as you said, Your Honor, it was the clear that what the government was saying was there's this witness who's too scared to come to court, but he identified the defendant, and so you don't have to worry that the evidence is sketchy. But Hutchins didn't address this problem, did it, whether or not a closing argument can constitute a violation of the Confrontation Clause? I think it is. I suppose it assumed that a closing argument could. And I don't think that there's anything strange or not plain about that, because, again, Crawford explains that the whole point of the clause is to prevent this use of ex parte evidence against the accused that he can't reasonably confront. And so it's arguably worse in closing argument, because although the instructions say, you know, arguments aren't evidence, but a jury listening to it, it's going to be difficult for a jury to parse that out and ignore that the prosecutor has said that there is a witness who has incriminated the defendant but has refused to come to court, but it's the truth, so you should believe it anyway. Well, that runs headlong into the instructions, though, which specifically tell them what the attorneys say is not evidence. That's true, but this Court has also said that when there's a really prejudicial statement and there's not a specific curative instruction, then we still worry about prejudice, even if there are those general instructions. I believe that was the Starks case from this Court. And that brings us full circle to where we are here on plain air. I mean, one thing seems really difficult about this case for you is that these were, like so many of these things, could have been handled with a curative instruction or a limiting instruction with a contemporaneous objection. I don't think that a confrontation clause violation can be handled with a witness into court. That is the only way to cure the error. Objection. Your Honor, this violates Crawford. Jury, you're instructed not to consider it. Jury, you can only consider this for X. I mean, it seems like there may not even be a confrontation clause problem once the curative action takes place. Well, I think the, so there was an objection. The attorney didn't expressly mention the confrontation clause, but there was an objection and the response from the government was not, oh, this is a limited purpose, this is background. There was no permissible use of this evidence. The government said this is highly relevant and it's not hearsay because I'm specifically not asking for any statements. And so that shows that the defense attorney couldn't have asked for a limiting instruction because it was admitted for its full truth value. So what was the, what was the ground for the objection? Hearsay. Yeah. So, I mean, that's, I mean, trial judges deal with that daily. That's why we're requiring a specific objection. And we don't let you say, objection, hearsay, overruled. Oh, well, I also mean this, overruled. You've got to, you've got to, you've got to state the grounds of your objection. But anyway, I'm sorry to keep this going. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Tiffany Walters for the United States. Starting with his opening, Lopez chose to put Ms. Molina's statements before the jury. Defense counsel argued, quote, throughout this entire case, Christina Molina said nothing happened. It was a disagreement. Counsel argued she refused to cooperate in the prosecution of this case. And the defense attacked the adequacy of the investigation both in opening and throughout trial. Having himself relied on Ms. Molina's statements for the truth of the matter asserted, he cannot now show that his confrontation rights were plainly  Ms. Walters, I think, I want to make sure that I understand your argument. You're saying that if the defendant offers argument based on an accurate recitation of the evidence, then the government, then the defendant then has opened the door for the government to elicit otherwise inadmissible evidence to rebut the defendant's accurate recitation of what the evidence actually was. The defendant, from what you recited, didn't say anything that was not untrue. Christina had said that, yeah, I know you've been told this, that this carjacking, that's just not true. The defendant says that, that's just factually indisputable. And so now the government can say, okay, well, there was inadmissible evidence that she also said this other stuff. That doesn't seem, I mean, I've never seen opening the door used that way. I'd point the court to this case in Lopez Medina, where the court, in that case, the defense counsel had cross-examined the witness on C.I.'s confidential informant statements, and that allowed the government to, on redirect, to ask about additional statements by the confidential informant. And now I recognize this isn't quite the same situation, and here the government didn't actually bring in any other statements, but it did open the door, invite discussion into the context of the investigation. Here we have him relying for his truth on these out-of-court statements. Not just that they occurred, the government admitted that they occurred. It was necessary to talk about them in terms of explaining what happened in the course of the investigation. But the defendant here is actually saying nothing happened because this victim said nothing happened. And in that circumstance, it's reasonable for the government to ask limited questions that this victim was actually interviewed by officers as part of the investigation about the carjacking before they proceeded with the case. And so because you're rebutting that, and I think you acknowledge on page 29 that it was incriminating, so what you're saying is they opened the door and so we were entitled and exercised that right by eliciting incriminating evidence about the content of what Christina said. Otherwise, nothing which you just recited in your first several minutes is even relevant. So what you're saying is, and you've acknowledged it on page 29 of your brief, it was incriminating, and secondly, you were entitled to, but you rebutted defense counsel's argument that Christina didn't implicate Lopez. I think the implication of Lopez still goes to the adequacy of the investigation and the context of the investigation. Right. So you were entitled to it, but you did elicit evidence then that Christina implicated Lopez in the carjacking. I think that could be a reasonable inference the jury could draw, but again, I'd like to go back to the content of the statements here. So here we don't have statements made by the victim in the interview. We have questions about what was asked. Could I just jump in? It seems to me that if you're going to press this open-the-door argument to justify what happened here, why wouldn't it have been permissible for the government simply to ask the officers what Ms. Bellina told them in the interview? Wouldn't the door be open to that? I think Hemphill, the concurrence in Hemphill from Justice Alito, could suggest that in certain circumstances it might be permissible to bring in the statements. Now, the government didn't do that here. The government chose not to go as far as it potentially could have. But still, my question is, if you're going to open the door and say, if you're saying, well, they opened the door so this was okay, it was okay what happened here, are you also conceding then that the line of questioning from these two officers did elicit inadmissible hearsay that violated the Confrontation Clause? No, we're not. This is an alternative argument. So to come back to... Well, okay, I know there's an alternative argument, but the argument we're focused on right now, that seems, to borrow a word, that seems to be the implication of what your argument is. You say, well, they opened the door so it was permissible to present this testimony. But it seems like what you're saying is it was permissible to present hearsay by implication. I think it could be permissible to present hearsay, but in this case we didn't present hearsay. So I think it's a two-pronged argument. I don't think there was a... As an alternative argument for basis for this court to affirm. So just so I'm clear, you're saying, first, it wasn't hearsay?  And if it was, you could do it under Lopez-Medina?   So turning back... But you do concede that Melina, that the questioning of Whitaker and Romero suggested that Melina said something incriminating against Lopez. So you acknowledge that it wasn't just to show that... The effect wasn't just to rebut a sloppy investigation defense, but it did create an inference that she had said something incriminating Lopez. I think that's a reasonable inference the jury could draw, although the fact that there's something incriminating about that is not determinative on the where information that has some incriminating implications is coming out. In that case, the confidential informant identified or said something that caused the officers to focus on the defendant. This court has repeatedly allowed testimony as background context evidence that would in some way assist the government's investigation, suggest something incriminating. But for confrontation clause, we have to have hearsay. We have to have a statement. We have to know what Ms. Melina said. And here, we only know that something she said caused... Or after something she said, the investigation continues. We don't know whether she... The investigation is for... Let me just... I'm sorry to ask you so many questions. So the questions presumably are relevant, right? The questions, in order to incriminate Lopez, they have to be relevant to the charges that would occur in Romero pursuit, which are the charges that were identified in the indictment. And so if they incriminated Lopez, they presumably were relevant to the charges, i.e. the same charges that found their way into the indictment. And so the implication that you acknowledge of incriminating Lopez was that she incriminated him with regard to the charges in the indictment. Isn't... I mean, how could anybody say anything other than that? We have an uncooperative witness at this point that could have agreed with everything Ms. Rios said, could agree with part of what she said, could have just said enough that the officer's concerns were not resolved based on what Ms. Molina reported. We don't know what the statements are, and that is why it is so difficult to determine what the statements are. And then it also... Well, isn't that always the case with hearsay by implication? You don't have the actual statements, right? Some of the cases that the defense cites comes pretty close to basically identifying the substance of the statements. It's not just... Let's look at a few of these questions. Did you ask about the vehicle? Did you ask whether there was a firearm? Did you ask whether a defendant threatened her with a firearm? Did you ask her if she willingly gave the defendant her vehicle? Those are the elements of the offense. Those questions do go to the elements of the offense, but again, we don't know how Ms. Molina responded to those questions. Well, if she'd said no to all the questions, why would they proceed with the prosecution? She's the primary victim. I think she could have just said enough that it didn't resolve the concerns raised by Ms. Molina's reporting. Obviously, she had said previously that nothing happened, so the mere fact that they asked her these questions doesn't indicate what she said in response to it. And it's a necessary part of the story of the investigation here. So we have the primary victim saying nothing happened. Was it necessary, really? Maybe the officers, the prosecution presenting that they interviewed Ms. Molina about the case shows that they did their due diligence in their investigation, but do they have to lay out all those questions to give that kind of background for the investigation? Does the jury really need to know that? Does the prosecution need that for its case? So in the examination of Sgt. Whitaker, the government did not ask those questions. I know. I'm giving you the Romero questions, and those are the ones that I think were really the most troubling. But I think the cross of Sgt. Whitaker explains why the government went into more depth with the questions with Agent Romero, because the defendant, again, suggested that that interview wasn't recorded and that we don't know what the government or the FBI asked for it not to be recorded. But I asked your opposing counsel this question about status of Tenth Circuit law. You aren't arguing that a court in the Tenth Circuit, this court or a district court, is prohibited from excluding hearsay by implication. I think it's a very fact-specific case. We did cite Ibarra-Diaz at page 21 of our brief. That's what I'm asking. Does Ibarra-Diaz state an across-the-board rule prohibiting recognition of hearsay by implication in the Tenth Circuit? I think Ibarra-Diaz says that you have to have a statement. And so where you don't have a statement, like in this case... But now we're back to simply applying the hearsay rule, right? Assertion intended, or a statement intended as an assertion offered for its truth. I take it the door is open for courts to consider that. Would you agree with that? For purposes of implied hearsay. I'm sorry, can you repeat that question one more time? Is implied hearsay a viable concept in the Tenth Circuit? I don't know that Ibarra-Diaz completely forecloses it, but also... There are a lot of courts around the country that recognize it. Treatises, evidence experts. We don't have much law in the Tenth Circuit. We have Ibarra. I just want to know if you think that closes the door. I think it does require a statement. And so here we don't have a statement. I don't know that it fully addresses exactly the circumstances raised here, and I think these are facts. I'm asking if it states a rule that there can never be implied hearsay in the Tenth Circuit. I'm not sure that it goes that far, but I would point the court to Duran, where the court considered this implied hearsay argument and said that we've Now, that was referring to part. It's a conspiracy overview. There were several arguments in Duran about Macy's. There were. But in light of Duran, it's clear that the error wasn't planned. If there was an error, why wasn't it planned under Crocker? Because of Duran. Duran, we have a case where the defendant is raising this Macy's argument that implied hearsay can constitute a violation, and this Court said we haven't accepted it and cites these other cases. And now while Duran may not be the definitive rule on this, it certainly shows that the error isn't plain, that this isn't clearly the law in the Tenth Circuit. I would also like to turn to the prong three argument, which I think is quite strong in this case. Here the trial evidence was overwhelming. So even if there is a confrontation clause problem, there is no need to reverse because the defendant cannot show a reasonable probability of a different outcome. Here we have a real-time 911 call, an open call, capturing the victim's screams, Lopez's demands that she let go of it, to get in the back, get out of the car, and the defendant's threat to shoot. And that's at minute three of Exhibit 16, around the six-second mark. We have 911 reports made by Ms. Rios and Padilla. Ms. Rios was on the line the whole time, so it was immediately after this happened, indicating that Lopez had threatened them, that he had robbed her car, that he had threatened to kill them if they reported it. We also have Padilla, who is in a separate location. He observes it but isn't in the car and calls in to 911 right afterwards and also reports that he saw the gun, that he saw him push Rios out of the driver's seat, that he saw him hit her with the gun. Can I just jump in? I think we can review the evidence and record. But I had a question on the Rule 403 issue. I was interested in Pallant's argument that the line of questioning for the officers didn't provide anything on probative value, that the evidence lacks legitimate probative value. Would you agree with that? I think the evidence does have legitimate probative value in providing the story of the investigation and the background context. And so for the same reasons that the Confrontation Clause argument fails, so does the 403 argument, because there is probative value in that. And the prejudice doesn't substantially outweigh it in light of the extensive evidence in the record. Thank you. Can you indulge me a second time? Well, I think we owe her some time anyway. I'm happy to answer. I think we owe her some time because we went over the… Oh, that's true. But go ahead. Is it okay? Yes, of course, it's okay. So when the prosecutor says in closing, they, talking about Catalina and Christina, don't deserve to live in fear for reporting the truth, what evidence was there that Christina is, A, living in fear, and when you said, or not you, your counterpart, for reporting the truth, I guess that's what you're referring to on page 29 of your brief, that not only was the question that Romero suggested of incrimination, but the prosecutor wanted to, I guess, or did, intentionally or not, make sure that the message wasn't lost. She reported the truth after Judge Matheson pointed out all of the elements of carjacking. So how can the jury have walked away with the combination of that litany of questions, those six questions to Romero, Christina is living in fear, she's, A, been threatened, and what evidence was there? She didn't show up under the material witness window. What evidence was there that she was threatened or living in fear? And secondly, how can we otherwise interpret the phrase, reporting the truth? So I'll answer the first part of your question. I know, it's a compound. I know. And they're both related. So Ms. Molina, Mr. Padilla did report to 911 that Lopez had threatened Ms. Molina that he would kill her and her family if she said anything happened. So there is a direct threat in that regard. We have both of the officers, Sergeant Whitaker and Agent Romero, testifying that she's reluctant, she's scared in their interactions with her. We have Ms. Molina herself calling Ms. Rios and saying he robbed my car and asking her not to say anything, which is, granted, circumstantial evidence, but still she's very concerned about this being reported. And then we have all the efforts that the officers made to arrest her pursuant to this material witness warrant, and she managed to elude them. What about that reporting the truth part? The reporting the truth. So I think what the prosecutor was referring to in that section was really the threats and the fear, and I think that was the focus of that section. Certainly the word truth carries additional meaning, and I think that that was perhaps the exact same paragraph could have been said with the word crime, and it would have been perfectly acceptable. So I think there perhaps could have been. He was making clear that she reported the crime. Certainly. I think that's true. Perhaps there could have been a better word chosen in the moment. Everything that you're quoted has been arguing that Christina reported the crime, not Catalina, Christina reported the crime to Romero. I thought you spent your whole brief in your argument today saying, no, she didn't. She was agnostic on it. She didn't say that. Well, she spoke to them and said something that caused them to continue with the investigation. Now, whether that means she said everything, I don't think that that's all wrapped up in that one word, but we do know that she was asked about it, and then whatever she said after that, the investigation proceeded. Thank you, and thank you to the panel. Thank you. I appreciate your time. Thank you. The case will be submitted, and counsel are excused.